16-2017-CA-002892-XXXX-MA

Filing # 56078384 E-Filed 05/05/2017 04:14:12 PM

IN THE CIRCUIT COURT OF THE FOURTH JUDICIAL CIRCUIT IN AND FOR DUVAL COUNTY, FLORIDA

SINAPIS PHARMA, INC. a Florida corporation,

       Plaintiff,

vs.

BOOTH UDALL FULLER, PLC, an Arizona professional limited liability company, FINNEMORE CRAIG, P.C., an Arizona corporation, and RODNEY J. FULLER, an individual,

       Defendants.
_____/

Case No.:

## COMPLAINT

Plaintiff, SINAPIS PHARMA, INC. ("Plaintiff"), sues Defendants, RODNEY J. FULLER, FENNEMORE CRAIG, P.C., and BOOTH UDALL FULLER, PLC ("Defendants"), and alleges:

### JURISDICTION, VENUE & PARTIES

1.    This is an action for damages that exceed $15,000.00, exclusive of interest, costs, and attorney's fees.

2.    Plaintiff is a Delaware corporation with its principal place of business in Jacksonville, Florida.

3.    Defendant RODNEY J. FULLER ("FULLER") is an adult individual residing in the state of Arizona.

4.    Defendant FENNEMORE CRAIG, P.C. ("FENNEMORE") is a corporation with its primary place of business in Phoenix, Arizona.

5. Defendant BOOTH UDALL FULLER, PLC ("BOOTH") is a professional limited liability company with its principal place of business in Tempe, Arizona.

6. This Court has jurisdiction over Defendants because, among other things, Defendants:

   a. contracted to perform legal services for Plaintiff, a corporation with its principal place of business in Jacksonville, Florida, and;

   b. committed a tortious act(s) within this state;

   c. provided substantial and not isolated services to clients in Florida, including Plaintiff.

7. Venue is proper in Duval County, Florida because Defendants are non-residents and, as a result, venue is proper in any county in Florida where a Florida court can secure jurisdiction over the Defendant.

## FACTUAL ALLEGATIONS

8. Plaintiff was formed in 2009 by a group of experienced medical doctors, scientific researchers, and capital investors for the purpose of developing a new use for intravenous methamphetamine: the treatment of traumatic brain injuries. ("IV Meth.")

9. IV Meth was initially discovered in 2007, at which time a patent application was made.

10. After initial research indicated that IV Meth was effective, Plaintiff began clinical trials for approval by the United States Food and Drug Administration ("FDA") in humans.

11. In 2009, Plaintiff entered into a contract with Defendants FENNEMORE and FULLER for legal services for the purpose of obtaining and securing patents for IV Meth in both the United States and in numerous other countries abroad.

12. Subsequently, on April 9, 2012, Plaintiff entered into a contract with Defendants BOOTH and FULLER for legal services for the purpose of obtaining and securing patents for IV Meth in both the United States and in numerous other countries abroad.

13. At all times material, Defendants BOOTH and FULLER hold themselves out as an "intellectual property boutique firm dedicated exclusively to handling patents, trademarks, copyrights, trade secrets, know how and licensing."

14. Specifically, Defendant FULLER advertises that he "has extensive experience representing companies in all areas of patent law, including patent procurement and portfolios management; patent opinion, licensing, and agreement work; patent litigation; and appeals before the USPTO Board of Appeals."

15. On or about September 2, 2012 and at numerous other times beginning in 2009 and continuing through 2016 Defendant FULLER advised Plaintiff's Board of Directors that Plaintiff would be eligible to apply for an extension of patent exclusivity for IV Meth pursuant to 35 U.S.C. § 156.

16. This advice was critical to Plaintiff's business plan because the process for FDA approval was expected to take up the majority of IV Meth's patent exclusivity period. As such, Plaintiff would not be left with enough time to recover its investment in IV Meth or generate profits without a 35 U.S.C. § 156 extension. Defendants further advised that, the longer the FDA approval and patent review processes took, the longer the 35 U.S.C. § 156 extension could be.

17. Therefore, Plaintiff delayed its U.S. patent prosecution with the expectation that it would be eligible to apply for a 35 U.S.C. § 156 extension that would provide a significant period of patent exclusivity after the FDA approval process was complete.

18. Based upon this advice, Plaintiff spent approximately $8,000,000 on the development and testing of IV Meth, including the FDA approval process.

19. But for this advice, Plaintiff would not have invested or continued to invest in the development and testing of IV Meth.

20. Defendants' misadvice specifically caused Plaintiff to plan its development of IV Meth differently than it would have if Defendants had properly advised them.

21. The Phase I clinical trials were successful and the FDA subsequently approved medical trials for IV Meth to be used in humans.

22. In April of 2016, as IV Meth successfully went through development, independent consultants estimated the "net present value" of IV Meth to be approximately $18,000,000.

23. After successful Phase I Clinical Trials, Plaintiff arranged for an investor, Jackson Investment Group, LLC, ("JIG") to purchase the assets of Plaintiff, specifically IV Meth and its patent, in exchange for a 50% share of a joint venture and $15,000,000. The purpose of this venture was for Plaintiff and JIG to further fund the development of IV Meth through the completion of the patent and FDA approval processes and continue to hold the patent during the period of extended exclusivity, thus allowing a recovery of the respective owners' investments.

24. Plaintiff and JIG began executing documents to formalize and complete this joint venture and sale on or about July 11, 2016.

25. In an exercise of due diligence prior to closing their deal Plaintiff and JIG received a memorandum of law ("the due diligence memo") from another law firm about the viability of their business plan on July 22, 2016.

26. In the due diligence memo, Raymond R. Mandra, Esq. unequivocally advised JIG and Plaintiff that IV Meth was ineligible to apply for an extended period of exclusivity based upon the plain language of 35 U.S.C. § 156.

27. A plain reading of 35 U.S.C. § 156 reveals that such a patent extension applies only to the "first permitted commercial marketing or use of the product." 35 U.S.C. § 156(a)(5)(A) (2016).

28. As described in the due diligence memo, IV Meth did not fit this criterion because methamphetamine had previously been patented.[1]

29. After taking significant steps to formalize and complete their capitalization agreement, Plaintiff and JIG were advised that the IV Meth patent was not eligible for the extension that was the basis of their business plan. As a result, IV Meth became worthless because the joint venture would not have a period of sufficient exclusivity to recoup its investment or make a profit.

30. JIG then withdrew from the $15,000,000 capitalization deal.

31. Defendants' misadvice caused irrevocable harm to the development of IV Meth, such that IV Meth effectively lost all of its monetary value after the misdavice was discovered.

32. Plaintiff's patent prosecution strategy assumed and relied upon eligibility for the 35 U.S.C. § 156 extension. Plaintiff was ultimately forced to abandon IV Meth because, without the 35 U.S.C. § 156 extension, IV Meth did not have a sufficient period of post-FDA approval patent exclusivity to remain financially viable.

33. Plaintiff was forced to subsequently sell JIG an additional 40% of its ownership to JIG, leaving Plaintiff with 10% ownership and JIG with 90% ownership.

---

[1] Methamphetamine was approved and patented under the proprietary name Desoxyn prior to January 1, 1982.

34. The direct result of Defendants' incorrect advice Plaintiff was the complete destruction of IV Meth's value. While Plaintiff is attempting to pursue the development of other products, none are considered a replacement for IV Meth.

35. Plaintiff has suffered a significant loss in time, investments, and other damages because they relied upon Defendants' advice regarding IV Meth's eligibility for the 35 U.S.C. § 156 extension.

36. All general and statutory conditions precedent to bringing this action have been performed, have occurred, have been waived, or have otherwise been excused by the Defendants' actions.

## COUNT I – NEGLIGENCE
### (FULLER)

37. Plaintiff realleges and incorporates herein Paragraphs 1 through 36 above.

38. FULLER owed a duty to Plaintiff to act in the Plaintiff's best interests and to exercise ordinary, reasonable care in connection with the provision of their services to Plaintiff and the prosecution of the patent for IV Meth.

39. In addition, as attorneys providing professional legal services, FULLER owed Plaintiff a duty to exercise the level of care and render legal services with the degree of skill, care, knowledge, and judgment possessed and exercised by other members of the legal profession. Specifically, FULLER had a duty to correctly determine whether or not IV Meth qualified for the 35 U.S.C. § 156 extension and advise their client appropriately.

40. FULLER negligently and carelessly performed legal services and otherwise violated his duties of care. In particular, FULLER failed to advise Plaintiff of the meaning and language of 35 U.S.C. § 156, as well as incorrectly advising Plaintiff's Board of Directors that IV Meth was eligible to apply for a 35 U.S.C. § 156 extension.

41. But for FULLER'S negligence, Plaintiff would not have invested in IV Meth, or would have pursued the development of IV Meth in an entirely different manner.

42. As a direct, foreseeable, and proximate result of FULLER'S negligence, Plaintiff suffered damages, including but not limited to:

   a. Out-of-pocket expenses spent on the development of IV Meth;

   b. Lost investment and venture capital value;

   c. Damages incurred as a result of Plaintiff's reliance on FULLER'S negligent advice;

   d. Lost income that IV Meth would have yielded had Plaintiff received correct advice regarding the application of 35 U.S.C. § 156 and been able to plan accordingly.

WHEREFORE, Plaintiff demands judgment against Defendant FULLER for damages, interest, costs, and for such other and further relief as the Court deems just and proper.

## COUNT II – NEGLIGENCE
### (FENNEMORE)

43. Plaintiff realleges and incorporates herein Paragraphs 1 through 36 above.

44. While FULLER was FENNEMORE'S employee, FENNEMORE owed a duty to Plaintiff to act in the Plaintiff's best interests and to exercise ordinary, reasonable care in connection with the provision of their services to Plaintiff and the prosecution of the patent for IV Meth.

45. In addition, as attorneys providing professional legal services, FENNEMORE owed Plaintiff a duty to exercise the level of care and render legal services with the degree of skill, care, knowledge, and judgment possessed and exercised by other members of the legal profession. Specifically, FENNEMORE had a duty to correctly determine whether or not IV

Meth qualified for the 35 U.S.C. § 156 extension and advise their client appropriately.

46. FENNEMORE negligently and carelessly performed legal services and otherwise violated their duties of care. In particular, FENNEMORE failed to advise Plaintiff of the meaning and language of 35 U.S.C. § 156, as well as incorrectly advising Plaintiff's Board of Directors that IV Meth was eligible to apply for a 35 U.S.C. § 156 extension.

47. But for FENNEMORE'S negligence, Plaintiff would not have invested in IV Meth, or would have pursued the development of IV Meth in an entirely different manner.

48. As a direct, foreseeable, and proximate result of FENNEMORE'S negligence, Plaintiff suffered damages, including but not limited to:

   a. Out-of-pocket expenses spent on the development of IV Meth;

   b. Lost investment and venture capital value;

   c. Damages incurred as a result of Plaintiff's reliance on FENNEMORE's negligent advice;

   d. Lost income that IV Meth would have yielded had Plaintiff received correct advice regarding the application of 35 U.S.C. § 156 and been able to plan accordingly.

WHEREFORE, Plaintiff demands judgment against FENNEMORE for damages, interest, costs, and for such other and further relief as the Court deems just and proper.

### COUNT III - NEGLIGENCE
### (BOOTH)

49. Plaintiff realleges and incorporates herein Paragraphs 1 through 36 above

50. Upon accepting Plaintiff as a client, BOOTH owed a duty to Plaintiff to act in the Plaintiff's best interests and to exercise ordinary, reasonable care in connection with the provision of their services to Plaintiff and the prosecution of the patent for IV Meth.

51. In addition, as attorneys providing professional legal services, BOOTH owed Plaintiff a duty to exercise the level of care and render legal services with the degree of skill, care, knowledge, and judgment possessed and exercised by other members of the legal profession. Specifically, BOOTH had a duty to correctly determine whether or not IV Meth qualified for the 35 U.S.C. § 156 extension and advise their client appropriately.

52. Defendants negligently and carelessly performed legal services and otherwise violated their duties of care. In particular, BOOTH failed to advise Plaintiff of the meaning and language of 35 U.S.C. § 156, as well as incorrectly advising Plaintiff's Board of Directors that IV Meth was eligible to apply for a 35 U.S.C. § 156 extension.

53. But for BOOTH'S negligence, Plaintiff would not have invested in IV Meth, or would have pursued the development of IV Meth in an entirely different manner.

54. As a direct, foreseeable, and proximate result of BOOTH'S negligence, Plaintiff suffered damages, including but not limited to:

   a. Out-of-pocket expenses spent on the development of IV Meth;
   b. Lost investment and venture capital value;
   c. Damages incurred as a result of Plaintiff's reliance on BOOTH'S negligent advice;
   d. Lost income that IV Meth would have yielded had Plaintiff received correct advice regarding the application of 35 U.S.C. § 156 and been able to plan accordingly.

WHEREFORE, Plaintiff demands judgment against BOOTH for damages, interest, costs, and for such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury on all issues so triable.

Dated: May 5, 2017

                        **MORGAN & MORGAN, P.A.**
                        **Business Trial Group**

                        *s/* Cory S. Simmons
                        **Cory S. Simmons**
                        Florida Bar No. 42301
                        **Damien H. Prosser**
                        Florida Bar No. 17455
                        76 South Laura Street, Suite 1100
                        Jacksonville, Florida  32202
                        Telephone: (904) 361-4417
                        Facsimile: (904) 361-4378
                        Email: CSimmons@forthepeople.com
                        Email: DProsser@forthepeople.com
                        Email: JSantos@forthepeople.com